**Udall | Shumway**
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

David R. Schwartz - #009264
das@udallshumway.com
Kimberly R. Davis - #030210
krd@udallshumway.com
Attorneys for Defendant Maricopa
County Community College District
Maria Wise and Vivian Miranda

# UNITED STATES DISTRICT COURT
## DISRICT OF ARIZONA

| | |
|---|---|
| James Rogers and Judy Ellen Rogers,<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County Community College District, a political subdivision of Arizona; Maria Wise, an individual; and Vivian Miranda-Strawbridge, an individual<br><br>Defendants. | NO. **CV2018-00605 PHX-GMS**<br><br>**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendants Maricopa County Community College District ("District"), Maria Wise, and Vivian Miranda-Wendelken (hereinafter "Miranda" who was formerly known as Vivian Miranda-Strawbridge) hereby move for partial summary judgment on the following claims and issues:

(1) The FMLA claim (Third Claim for Relief) must be dismissed throughout his 12 weeks of FMLA protected leave and when it ended in June 2017 Plaintiff was not able to and did not even request to return to work, so he was not entitled to reinstatement under the FMLA;

(2) If an FMLA claim (Third Claim for Relief) can still be maintained, summary judgment should be granted because the changes to Plaintiff's old position while he was on FMLA leave do not constitute an FMLA violation;

  (3) The ADA discrimination claim (Third Claim for Relief) for failure to reasonably accommodate Plaintiff's disability when he was finally able to return to work must be dismissed because it was not administratively exhausted with the EEOC before this action was filed;

  (4) The state law tort claim for intentional infliction of emotional distress (Second Claim for Relief) is barred or limited under the applicable one-year statute of limitations and/or the notice of claims statute.

There are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on these discrete issues and claims. This motion is supported by the contemporaneously filed Statement of Facts in Support of Defendants' Motion for Partial Summary Judgment ("DSOF").

**I. THE FMLA CLAIM IN THE THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED IN ITS ENTIRETY**

As part of the Third Claim for Relief, Plaintiff James Rogers (hereinafter "Plaintiff") sued the District[1] under the FMLA alleging interference with Plaintiff's FMLA rights due to a failure to reinstate him under 29 U.S.C. § 2614(a)(1). (Dkt 1, Complaint ¶ 94-100) The FMLA creates two interrelated substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job on return from protected leave. *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011). Under § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by FMLA. 29 U.S.C. § 2615(a)(1). When a party alleges a violation of § 2615(a)(1), it is known as an "interference" or "entitlement" claim. *Sanders v. City of Newport*, 657 F.3d 772, 777-778 (9th Cir. 2011). The claim here is an interference claim. (Dkt 1, Complaint, p. 15-16, ¶ 95-100)

---

[1] The Third Claim for Relief is not asserted against Defendants Drs. Wise or Miranda. (Dkt 1, Complaint, p. 15, ¶ 94)

The FMLA provides: "any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave-- (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). An employee's prima facie case where the employer allegedly fails to reinstate the employee requires the employee to establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* at 778. The issue here is the fifth element.

The right to reinstatement is not without limit. One relevant limitation is that the employee at the end of the FMLA protected leave must be able to return to work and perform the essential functions of the position at that time.[2] To be accorded the right of reinstatement, federal regulations provide:

> If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA. The employer's obligations may, however, be governed by the Americans with Disabilities Act (ADA), as amended. See § 825.702, state leave laws, or workers' compensation laws.

29 C.F.R. § 825.216(c). Courts have made clear that if a plaintiff at the end of their FMLA leave time is unable to perform essential functions, they are not entitled to reinstatement under the FMLA. *Jackson v. Simon Property Group, Inc.*, 795 F. Supp. 2d 949, 960-961 (N.D. Cal. 2011) (plaintiff not entitled to reinstatement when doctors

---

[2] If an employee requests reinstatement before the end of his FMLA leave, the employer bears the burden to demonstrate it did not permit reinstatement due to an inability to perform an essential function. *Sanders v. City of Newport*, 657 F.3d 772, 780 (9th Cir. 2011). Plaintiff made no such request here before the end of his FMLA leave. (DSOF ¶ 12-16)

reports given to employer showed he was unable to work and extended his leave beyond limit); *Clink v Oregon Health & Sci. Univ.*, 2014 WK 3850013, * 4 (D. Or. 2014) (no actionable FMLA violation where employee is unable to perform the essential functions of his job before the FMLA leave period ends). The Sixth Circuit in *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238 (6th Cir. 2004), rejected the argument that an employee has even a reasonable time after the expiration of their FMLA leave to request reinstatement under the FMLA. *Id*. at 247, 249.

Here Plaintiff could and did not request reinstatement for more than six months after exhaustion of his FMLA leave. Plaintiff exhausted his 12 weeks of FMLA leave[3] at the end of June 2017 and was transitioned by the District to ADA leave. (DSOF ¶ 12) Plaintiff's doctors certified that he was unable to return to work from February 6, 2017 through January 1, 2018. (DSOF ¶ 13-16) Attendance to work duties is recognized as an essential function of any job. *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Rios-Jimenez v. Principi*, 520 F.3d 31, 42 (1st Cir. 2008). Plaintiff was not entitled to reinstatement under the FMLA because he was unable to fulfill the essential functions of his position (he was unable to work at all) throughout his protected FMLA leave, so the FMLA claim in the Third Claim for Relief should be dismissed as frivolous. (DSOF ¶ 12-16)

Plaintiff appears to also be claiming that because changes were made to his position a FMLA violation may have occurred while he was on FMLA leave (so up to June 30, 2017) before he was able to return. The right to reinstatement is to either an employee's old position or to an equivalent position, and it accrues only when the employee returns from the FMLA protected leave. 29 U.S.C. § 2614(a) (right to reinstatement "on return from such leave" under section 2612). Plaintiff's right to take FMLA leave was not interfered with in any way as he successfully used all 12 weeks of FMLA protected leave. (DSOF ¶ 12) Plaintiff and his doctor said he was unable to and

---

[3] The FMLA provides for up to 12 workweeks of leave during a 12-month period. 29 U.S.C. § 2612(a)(1).

he should not return to his old position at GateWay (DSOF ¶ 13-16, 26-27, 29) and he even declined to return to his old position. (DSOF ¶ 28) So any change to his old position could <u>not</u> give rise to a FMLA claim as he would not be affected by changes to a position he would not and did not re-take. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002) (invalidating regulations which purported to require reinstatement under the FMLA absent a showing of "consequential harm"); *Liston v. Nevada ex rel Dept. Bus. & Ind.*, 311 Fed. Appx 1000, 1002 (9th Cir. 2009) (the FMLA provides no relief unless the employee has been prejudiced by the violation). Further, the right to reinstatement is not necessarily to an employee's old position, but the employer can instead put them in an equivalent position. 29 U.S.C. § 2614(a)(1). So mere changes to Plaintiff's old position do not violate the FMLA either particularly here where Plaintiff was not able to and did not return to his old position.

Even while an employee is on FMLA leave, deminimis changes can be made to their position for those that do return to work. Only a significant change in duties, salary or benefits could violate the FMLA for an employee who returns before the exhaustion of their FMLA protected leave. *See Cates v. Public Employees Retir. Sys. Of Nev.*, 357 Fed. Appx. 8, * 10 (9th Cir. 2009). It is a mixed question of law whether changes are de minimis or significant enough to support a FMLA violation for making the position no longer equivalent. *Bozarth v. Sunshine Chevrolet-Oldsmobile of Tarpon Springs, Inc.*, 2010 WL 1085720, * 12 (M.D. Fla. 2010). It appears from the allegations in the Complaint that Plaintiff is claiming the following constitutes impermissible interference with his FMLA right to reinstatement to his old position by making the following changes: (1) someone was hired to fill his position; (2) Dr. Miranda suggested that Plaintiff's office should be moved to where it has a line of sight to the DRS front counter; (3) his personal items were removed from his personal office; and (4) the ASU Internship program was restructured. (Dkt 1, Complaint, General Allegations, p. 8-9, 11, 14, 16, ¶ 46-49, 59-60, 62, 80, 97)

Hiring a substitute employee for one on FMLA leave is not an FMLA violation even if the person is a permanent substitute. *Brown v. JC Penney Corp.*, 924 F. Supp. 1158, 1163 (S.D. Fla. 1996). That is because the FMLA allows an employer the option of returning the employee to their old position or an equivalent position. 29 U.S.C. § 2614(a)(1). Also, for long leaves it would make no sense that an employer cannot hire a temporary replacement. In any event, no replacement was hired for Plaintiff's position and it remained opened for whenever Plaintiff was able and willing to return to it. (DSOF ¶ 17-18) Plaintiff was a Coordinator of Student Success Program with a specific budget line position number, while Jill Nico was hired temporarily as the DRS Manager at different campuses under a different budget position number. (DSOF ¶ 17-18) Plaintiff was offered his old job back, but he declined the offer. (DSOF ¶ 28)

Plaintiff also seems to be asserting that he could not return to his old position because it was no longer equivalent as required by the FMLA. Because Plaintiff was never cleared to return to work by the end of his FMLA protected leave, this issue is moot. Nor are the matters asserted a significant change to Plaintiff's old position. Plaintiff suggests that a statement was made that his office should be relocated, and his personal items were taken so effectively he could not return to work. In *Bozarth v. Sunshine Chevrolet-Oldsmobile of Tarpon Springs, Inc.*, 2010 WL 1085720 (M.D. Fla. 2010), the Court found there was no FMLA violation and the following changes to the employee's old position's job were de minimis: Plaintiff's work area was in a different room and Plaintiff was assigned to learn new cashier duties. *Id.* at * 12. Thus, moving Plaintiff's office in the same area but closer to the DRS front counter would not be a FMLA violation even if it occurred. *Id.*; *see Hillstrom v. Best Western TLC Hotel*, 265 F.Supp.2d 117, 126–27 (D. Mass. 2003) (loss of private office and change of reporting line de minimis). Plaintiff's office, however, remained exactly where it was as of the day he went out on leave and it was not moved. (DSOF ¶ 19) While Plaintiff's personal items (coffee mug, two photos in frames, and a coffee warmer) were removed from his former office and placed into storage, they could easily be moved back when

6

Plaintiff returned to work. (DSOF ¶ 23)  There was no significant change to Plaintiff's old position to support a claimed violation of the FMLA.

Limited reassignment of duties also does not constitute a significant change in one's employment status in a position. *See Cates v. PERS of Nev.*, 357 Fed. Appx. 8, *10 (9th Cir. 2009). When Plaintiff went out on leave, Rueben Saenz was brought in to serve as the Field Supervisor for the ASU internship program as Plaintiff had previously done. (DSOF ¶ 20-21)  Saenz was brought in due to his MSW credential which was required for that position. (DSOF ¶ 21)  So without Saenz coming in to serve as the temporary Field Supervisor for the internship, the program would have had to stop. Four interns from ASU were initially moved from DRS to other departments based upon the expressed desire of the interns, although one of them did return to work for DRS. (DSOF ¶ 22)  Two ASU interns remained working in the DRS office. (DSOF ¶ 22)  The internship was not restructured, and any changes were not a significant and adverse change to Plaintiff's job duties.  If Plaintiff had returned to work at GateWay, he would have resumed serving as the Field Supervisor for the ASU internship program. (DSOF ¶ 20-21)

During Plaintiff's FMLA leave, his old position remained available with equivalent pay, benefits, and duties. Any changes were de minimis and were simply the result of the District, as employer, trying to see that the DRS office continued to perform during Plaintiff's leave.  The FMLA claim, which is part of the Third Claim for Relief, is frivolous and should be dismissed.

**II.  THE DISCRIMINATION CLAIM IN THE THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED AS IT WAS NOT ADMINISTRATIVELY EXHAUSTED**

The Third Claim for Relief also makes an ADA failure to reasonably accommodate Plaintiff's disability claim against the District based upon his treatment when he was able to return to work in January 2018. (Dkt 1, Complaint ¶ 98-100)  A plaintiff must pursue a charge of discrimination or retaliation with the EEOC before they file suit under the ADA within the same time limits as apply to Title VII claims.

7

*Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006).  To establish subject matter jurisdiction for this Court, a plaintiff must have exhausted their administrative remedies by filing a timely charge with the EEOC before they file suit.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).  This serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision.  *Freeman v. Oakland Unified School District*, 291 F.3d 632, 636 (9th Cir. 2002).  Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

In assessing whether a claim was brought before the EEOC, incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.  *Freeman v. Oakland Unified School District*, 291 F.3d 632, 636 (9th Cir. 2002).  A plaintiff's claims are reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case," as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful.  *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002).  In determining whether a plaintiff has exhausted allegations that he did not specify in his administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.  *Id*.

On October 4, 2017, Plaintiff filed his Charge of Discrimination with the EEOC alleging retaliation and disability discrimination.  (DSOF ¶ 25)  When Plaintiff did submit his charge (including the attached letter) to the EEOC it did not include – and could not include – any alleged failure to reassign Plaintiff into a vacant position once he was cleared to return to work on or after January 1, 2018.  (DSOF ¶ 16, 26)  The

1  EEOC issued its right to sue letter on November 30, 2017 at Plaintiff's request. (DSOF
2  ¶ 30)  As of even that late date, Plaintiff still had not been cleared to return to work.
3  Plaintiff's position at GateWay remained open to him, but he, his attorney, and his
4  doctors said he should or would not go back to that position or work anywhere at
5  GateWay.  (DSOF ¶ 26-27, 29, 31)  Plaintiff's charge of discrimination and his letter
6  blamed his alleged mistreatment on the faculty and administrators located at GateWay.
7  (DSOF ¶ 25)  Plaintiff's return to work claim on the other hand involved Plaintiff
8  interacting with District HR personnel who were located at the District's administrative
9  offices in Tempe.  (DSOF ¶ 27)  Plaintiff's allegations of mistreatment/retaliation for
10 advocating for students with disabilities while he was working at GateWay's main
11 Washington campus are not like or related to a claim of interference with his personal
12 right to a reasonable accommodation for his own disability when he was finally released
13 to return to work.
14      The ADA claim made in the Third Claim for Relief should be dismissed as it was
15 not administratively exhausted.  This cause of action could only accrue as of January 2,
16 2018 when Plaintiff was cleared to return to work at a college other than GateWay.
17 (DSOF ¶ 16, 26)  Plaintiff never did or could complain to the EEOC about any alleged
18 failure by the District to reassign Plaintiff to a vacant position as he was not able to
19 perform in any position by the time the EEOC issued its November 30, 2017 right to sue
20 letter.  (DSOF ¶ 30)

21     **III.   PLAINTIFF'S STATE LAW INTENTIONAL INFLICTION OF
22     EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED, OR
       LIMITED, UNDER THE STATUTE OF LIMITATIONS AND/OR
23     NOTICE OF CLAIMS STATUTE**

24      In the Second Claim for Relief, Plaintiff sued the District and the individual
25 Defendants for alleged intentional infliction of emotional distress under state law.  To
26 establish a claim for intentional infliction of emotional distress, a plaintiff must show:
27 (1) conduct which is extreme and outrageous; (2) defendant's conduct was intentionally
28 or recklessly performed; and (3) such conduct caused severe emotional distress.

9

*Johnson v. McDonald*, 197 Ariz. 155, 160, ¶ 23, 3 P.3d 1075, 1080 (App. 1999). "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (App. 1995), *quoting, Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), *cert. denied*, 498 U.S. 811 (1990). While this claim lacks substantive merit, Defendants seek dismissal, in whole or in part, under the applicable statute of limitations and/or the notice of claims statute.

### A. Statute Of Limitations

Claims against a public entity and public employees under state law are subject to a one-year statute of limitations. A.R.S. § 12-821. This action was filed on February 23, 2018. (DSOF ¶ 32) Any cause of action which accrued on or before February 22, 2017 would be time barred under the one-year statute of limitation.[4] Almost the entirety of this claim is based upon acts which happened before Plaintiff left work and went on leave starting on February 6, 2017 due to a nervous breakdown. (DSOF ¶ 6-10) Plaintiff alleged he suffered a major heart attack back in March 2016 and subsequent cardiovascular incidents due to the stress while he was working up until February 6, 2017. (DSOF ¶ 6-10)

There is no allegation that Dr. Wise did or said anything to or regarding Plaintiff after he stopped working on February 6, 2017. (Dkt 1, Complaint) So whatever cause of action exists against her, it is completely barred.

Dr. Miranda also had no communication with Plaintiff after Plaintiff stopped working on February 6, 2017. (DSOF ¶ 11) Arizona does not apply the continuing violation theory to claims against public entities and public employees. *Watkins v. Arpaio*, 239 Ariz. 168, ¶ 12-14, 367 P.3d 72 (App. 2013). But the Complaint alleges a

---

[4] While Arizona law requires a notice of claim (as discussed below), the statute of limitations is not tolled during the pendency of any notice of claim. *Stulce v. Salt River Project Agr. Imp. & Power Dist.*, 197 Ariz. 87, 92, ¶ 17, 3 P.3d 1007, 1012 (App. 1999).

10

few isolated statements after February 6, 2017 by Dr. Miranda to third persons. (DSOF ¶ 33-39) One of those statements was made on February 17, 2017, so more than one-year time before this action was filed. (DSOPF 32-33) The statements were, with one exception, allegedly made to Plaintiff's workplace subordinate, Cindi Tanner, to sway her to trust Dr. Miranda while she was the acting DRS Manager. (DSOF ¶ 23, 33-37, 39) One set of alleged statements were made to other District disability professionals. (DSOF ¶ 38) Such statements outside the presence of the Plaintiff are not actionable as part of a claim for intentional infliction of emotional distress. *McKee v. State of Arizona*, 241 Ariz. 377, 383-84, ¶ 25, 388 P.3d 14, 20-21 (App. 2016) (limiting liability for intentional infliction of emotional distress to plaintiffs that are present at the time of the statements and conduct "as distinguished from those who discover later what has occurred"); *see Restatement (Second) of Torts* § 46(2)[5]. Therefore, the entire claim against Dr. Miranda and the District should be dismissed or, at worst, limited to statements or conduct occurring after February 22, 2017.

The alleged extreme and outrageous conduct of District faculty and administrators, including Dr. Wise, towards Plaintiff ceased once he stopped working. The only allegations after that date relate to Dr. Miranda and were a few isolated statements made to others, so they are not actionable. Plaintiff's cause of action accrued by February 6, 2017, so under the one-year statute of limitations his entire claim is barred. At worst, his claim based upon acts or statements made on or before February 22, 2017 is barred and his claim must be limited to acts or statements after that date.

**B. Notice Of Claim**

Plaintiff's claim is also limited under the notice of claims statute. Arizona law requires that any person with a claim against a "public entity", "public school", and/or

---

[5] This provision provides: "Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if such distress results in bodily harm."

11

1  "public employee" must file a written notice of claim before they file a lawsuit.  A.R.S. § 12-821.01.  The purpose of the notice of claims statute is to allow the public entity and the employee an opportunity before a lawsuit is filed to investigate and assess their liability, to permit the possibility of settlement prior to litigation, and to assist in financial planning and budgeting.  *Harris v. Cochise Health System*, 215 Ariz. 344, 351, ¶ 25, 160 P.3d 223, 230 (App. 2007).

Under the notice of claim statute, "public entity" is defined to include the state and any political subdivision of the state.  A.R.S. § 12-820(7).  Community college districts, such as the District, are political subdivisions of the state.  (DSOF ¶ 1) *McClanahan v. Cochise College*, 25 Ariz. App. 13, 17, 540 P.2d 744, 748 (1975).  Community college districts and the colleges they operate are also public schools as they are established under state law.  See *Jesik v. Maricopa County Community College Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980); A.R.S. § 15-1469.

The statute requires the filing within 180 days of accrual of a notice of claim which must contain a specific amount for which the claim can be settled and the factual basis for the claim**.**  A.R.S. § 12-821.01(A).  Any claim that is not filed within 180 days after the cause of action accrues is barred and no action may be maintained thereon.  *Id*.  "A cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage."  A.R.S. § 12-821.01(B).

Plaintiff, through counsel, did submit a notice of claim letter on June 29, 2107 (DSOF ¶ 24), so any claim accruing on or before December 31, 2016 is time barred.  Arizona does not apply the continuing violation theory to claims against public entities and public employees.  *Watkins v. Arpaio*, 239 Ariz. 168, ¶ 12-14, 367 P.3d 72 (App. 2013).  This would certainly bar any claim based upon the alleged stress of faculty and administration antagonism, and the public humiliation of not being hired to teach a class which predated Plaintiff's March 2016 heart attack resulting from such acts.  (DSOF ¶

6-8) Plaintiff even claimed he notified the College President in 2016 about faculty mistreatment of him, and nothing was done. (DSOF ¶ 6, 8)

The claim of intentional infliction of emotional distress is barred as to any acts, omissions or statements on or before February 22, 2017 under the applicable statute of limitation. This represents the entirety of the claim against Dr. Wise. The alleged statements of Dr. Miranda about Plaintiff's deficient work performance made after February 22, 2017 are not actionable as part of an intentional infliction of emotional distress claim. The notice of claim statute separately bars Plaintiff from suing based upon acts, statements and conduct on or before December 31, 2016.

DATED: June 5, 2018.

UDALL SHUMWAY PLC

/s/ David R. Schwartz
David R. Schwartz
Kimberly R. Davis
1138 North Alma School Road
Suite 101
Mesa, AZ  85201
Attorneys for Defendant Maricopa County Community College District, Wise and Miranda

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2018, I electronically filed the attached document using ECF for filing and transmitted the document through ECF to the following registered ECF users:

Israel G. Torres
James E. Barton, II
Saman Golestan
TORRES LAW GROUP, PLLC
2239 W. Baseline Rd.
Tempe, AZ  85283
Attorneys for Plaintiff

    /s/ Kimberly Kershner

5153937.1
109883.024

13