EXHIBIT 4

# UDALL | SHUMWAY
### COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

David R. Schwartz - #009264
das@udallshumway.com
Kimberly R. Davis - # 030210
krd@udallshumway.com
Attorneys for Defendant Maricopa County
Community College District

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James Rogers, an individual, | NO. **CV 2018-00605 PHX-GMS** |
| Plaintiff, | |
| v. | **DECLARATION OF LE HONG** |
| Maricopa County Community College District, a political subdivision of Arizona; Maria Wise, an individual; and Vivian Miranda-Strawbridge, an individual, | |
| Defendants. | |

Le Hong states:

1.      I am over the age of 18 years and am competent to testify to the matters set forth herein.

2.      I am employed as a Paralegal in the General Counsel's Office for the Maricopa County Community College District ("District").

3.      If a notice of claim or document purporting to be a notice of claim is sent or received by the District's Governing Board or any of its employees, they are supposed to forward it to the General Counsel's Office.  As part of my job duties, I am apprized when such documents are provided to the General Counsel's Office.

1    4.    Attached hereto as Exhibit A is a true copy of a letter dated June 29, 2017

2  from the Torres Law Group on behalf of Plaintiff James Rogers.  This document was

3  received and forwarded to General Counsel's Office.

4    5.    Attached hereto as Exhibit B is a true copy of a letter dated July 1, 2017

5  from the Torres Law Group on behalf of Plaintiff James Rogers.  This document was

6  received and forwarded to General Counsel's Office.

7    6.    If a Charge of Discrimination is filed with the EEOC against the District,

8  General Counsel is notified, and they communicate with the EEOC.

9    7.    Attached hereto as Exhibit C is a true copy of Plaintiff James Rogers'

10  Charge of Discrimination, including the attached September 8, 2017 dated letter, provided

11  to the District.

12    I declare under penalty of perjury that the foregoing statements are true and correct.

13  Dated: May 7, 2018.

14

15

16                                                    _____

17                                                    Le Hong

18  5163233.1
19  109883.024

20

21

22

23

24

25

26

27

28

                                          2

# EXHIBIT A

# Torres Law Group, PLLC

*An Arizona Law Firm*

7/5/17 lle

Saman J. Golestan

RECEIVED

JUL 0 3 2017

June 29, 2017

**Via Certified Mail & Email**

Dr. Linda Thor, Vice President
(former Official Secretary)
Gloria Smith, Assistant to the Board
Maricopa County Community College District
Office of the Governing Board
2411 West 14th Street
Tempe, Arizona 85281-6942
linda.thor@domail.maricopa.edu
gloria.smith@domail.maricopa.edu

Steven Gonzales
Gateway Community College President
Dr. Maria Wise
Vice President of Academic & Student Affairs
and Title IX Coordinator
Vivian Miranda-Strawbridge
Dean of Student Success and Retention
108 North 40th Street
Phoenix, Arizona 85034
Steven.Gonzales@gatewaycc.edu
vivian.miranda@gatewaycc.edu
maria.wise@gatewaycc.edu

**Re:** *Notice of Claim Pursuant to A.R.S. § 12-821.01 for Interference with FMLA, Retaliation for ADA Protected Activity, and Intentional Infliction of Emotional Distress*

Dr. Thor and Governing Board:

Our firm represents Claimant Mr. James Rogers, an employee of the Maricopa County Community College District ("MCCCD" or "District") and submits this Notice of Claim under A.R.S. § 12-821.01. This Notice of Claim stems from the District's retaliation against Mr. Rogers in response to his notifying the District of its failure to adhere to law and regulatory requirements associated with serving disabled students, its interference with his rights under FMLA, and its retaliation against Mr. Roger for his exercise of ADA protected activity.

## Effort to Resolve

Mr. Rogers has worked with MCCCD administration diligently to ensure that students receive accommodations required by, among other requirements, the Americans with Disabilities Act. Those efforts have been greeted with increasingly hostile and outrageous conduct by the District culminating in its recent hiring of a replacement for his position while Mr. Rogers was on FMLA leave. Further efforts to resolve the matter would be futile.

**Parties**

The claim is being asserted by Disability Resources & Services (DRS) Manager James A. Rogers ("J.R."). The claim is asserted against MCCCD, Gateway Community College President Steven R. Gonzales, V.P. of Academic Affairs & Title IX Coordinator Maria Wise, and Dean of Student Services & Retention Vivian Miranda-Strawbridge.

**Supporting Facts**

As detailed below, J.R. is a highly qualified, experienced and well-respected Disability Resources & Services Manager at Gateway Community College ("GWCC"). J.R. has worked tirelessly to serve the students of GWCC. He has developed programs to facilitate providing the highest quality of service to those students, including an innovating internship partnership with Arizona State University.

Unfortunately, J.R. was in constant conflict with the administration and the faculty due to his advocating for compliance with ADA policies for students. J.R. faced resistance in advocating for note takers and special testing conditions continually while working at GWCC, even when these accommodations were a part of a formal disability accommodation plan for the student. This resistance escalated over time to overt retaliation. The stress from these emotional and psychological attacks was physically manifested in a heart attack, numerous cardiovascular incidents, and a nervous breakdown. Furthermore, the administration has filled J.R.'s position while he was on FMLA leave.

MCCCD's treatment of such a dedicated public service shocks the conscience. It borders on wicked. It violates the ADA, FMLA, and amounts to an Intentional Infliction of Emotional Distress.

A.    J.R.'s efforts to advocate for disabled students at GWCC

J.R. experienced frequent confrontations with Dr. Abdul Awad, Math & Science professor and Dr. Jim Baugh, Department Chair of Math & Science. In one example, Dr. Awad resisted every accommodation of a diabetic student in his class. He harassed the student and revealed her condition in front of the class. Dr. Awad also interfered with student testing accommodations throughout the spring of 2016. J.R. advocated for this student to be allowed the accommodations that were appropriate.

Dr. Peter Zawicki, Physical Therapy Program Director, had multiple long-term, exceptionally hostile confrontations with J.R. in private and public settings with no resolution from the administration. These conflicts revolved around several PTA students for whom J.R. insisted Dr. Zawicki honor their accommodations. For this, J.R. endured hostility and verbal assaults from Dr. Zawicki, including in public settings. Notably, Dr. Zawicki was a principle player in discrimination against a PTA student who filed an OCR complaint.

At the beginning of the spring semester of 2016, J.R. stood up for a DRS student experiencing bullying from Mike Corry and Jim Kenney in the HVAC Program. They refused to sign the student's accommodation form or adhere to the accommodations required. In fact, they

2

declared that they would not permit any accommodations in the HVAC classes. The conflict culminated in a meeting in which Mr. Corry kicked his own dean out of the meeting, saying to J.R., "Tell your buddy Ricardo that he doesn't need to be here."

This pattern of J.R.'s advocacy for GWCC students receiving the accommodations that they were required to receive by the ADA being met with open hostility from faculty members without support from the administration was repeated with Dr. Bryan Dodd, Division Chair, Health Sciences and Margi Schultz, Nursing Division Chair.

In December 2016, the faculty issued a new policy to J.R. and the DRS department regarding how accommodations are defined. Dr. Peter Zawicki, Nursing Department Chair sent J.R. a statement that Dr. Zawicki required to accompany every Instructor Notification of disability accommodations as they pertained to any lab class in the Science or Healthcare departments. This statement constituted a restriction and a denial of accommodations to students with a documented disability. J.R. objected to this policy because it ignored the limited circumstances in which an accommodation could be altered. This statement was sanctioned by Vice President of Student Affairs Joni Grover.

On December 13, 2016, J.R. was instructed by V.P. Wise and Dean Miranda-Strawbridge that it is not within the scope of his job description to advocate for students or to enforce the ADA to the campus community. J.R. objected to this ludicrous claim.

On February 1, 2017, J.R. met with Dean Miranda-Strawbridge and Maria Wise to identify critical understaffing in DRS and potential solutions. The understaffing had risen to the point of interfering with DRS's ability to provide services as required by law. The resulting new hire served only one day before being rejected by the administration.

On or about February 2, 2017, J.R. met with President Steven Gonzales regarding the retaliation that J.R. was experiencing. The President told J.R. he should consider looking for work somewhere else, noting that J.R. "didn't want to end up in court like Michael Corry" and reiterated that neither J.R. nor OCR was the enforcer of ADA compliance on campus. This remark was in conflict with the guidance District, Rebecca Curry.

On February 6, 2017, a nursing student reported discrimination – an instructor told her to put her digital voice recorders in her purse and had to follow a strict procedure contrary to DRS district policy. Furthermore, Jennifer Badalamenti, Iman Zamzam, and Reham Farid reported to J.R. that their instructor did not like students with disabilities. Special instructions were issued by instructor Peter Melenovich and Ashley Garneau about how to schedule their exams at the Testing Center with a requirement to e-mail the instructor confirming that they had in fact scheduled at the Testing Center (and not through DRS office). The instructors also told the students not to do the process the DRS office required of the students but to follow their instructions instead. The administration reprimanded J.R. and Ms. Tanner for advocating for these students.

B.     Series of mental and emotional attacks perpetrated by GWCC in response

Just as J.R.'s struggles to bring GWCC into compliance with the ADA, and indeed its own policy, continued for many months, so did the retaliation against J.R.

As early as January 20, 2016, J.R. attempted to explain a flexible attendance accommodation for a student with an active and documented seizure disorder to a member of the faculty only to be attacked. Dr. Jim Baugh's shouting over the telephone at J.R. was so loud that Ms. Tanner could hear his voice outside of J.R.'s office. Zach Rivenbaugh, an IT Tech working on J.R.'s computer at the time, drafted a statement regarding the outlandish behavior of Dr. Baugh that was forwarded to the President.

Dr. Baugh barged into J.R.'s office over Ms. Tanner's objections claiming that he had to "have this out with him right now!" This scene unfolded in front of two students and ASU interns. The following day, President Gonzales came to J.R. and asked if J.R. was "going to do anything" about the conflict. When J.R. explained he would only do so if something positive would come of it, the President replied that the faculty would not change their behavior and acknowledged that J.R. was doing good work and had a "tough" job.

In March, 2016, Susan Mills, Department Chair, Arts & Humanities, Social & Behavioral Sciences, denied J.R. the opportunity to teach a social work class at the college—despite the fact that Vince Hoffman had already hired him and that J.R. was the only person with a MSW on campus at the time. Frank Zamora, Counseling Chair, urged Ms. Mills not to do this. She explained that the faculty "did not like" J.R. because of his role as DRS Manager. This was witnessed by Chris Mims and Dr. Vince Huffman. On March 23, 2016, in response to the public humiliation associated with this incident and the stress of the increasingly hostile environment in his department, J.R. suffered a heart attack.

*Interfering with Providing Services to Students by Removing Furniture*

For nearly a year the administration had publicly announced that the DRS department would be expanding in order to meet the volume of student needs. The DRS had no private area to meet with students and had to perform the majority of its services in public spaces. V.P. Wise asked J.R. and the Counseling Dept. Chair Frank Zamora to choose which department would relocate to the MA building. Frank Zamora offered to leave the shared space and accordingly drew up remodeling plans and ordered new furniture and equipment for Counseling.

Beginning on January 4, 2017, and throughout the month, Dean Miranda-Strawbridge repeatedly rejected J.R.'s DRS Area Usage proposal submitted to her according to her specific instructions to J.R., despite the fact that designing the layout and use of the DRS workspace was well within the purview of J.R.'s position.

On January 10, 2017, likely in retaliation for J.R.'s continuously challenging the administration and faculty on the need to faithfully execute student accommodations, the Dean directed two DRS rooms to be cleared of all furniture. On January 12, 2017, V. P. Tony Asti directed J.R. on how the DRS Dept. should utilize the office spaces vacated by the Counseling Dept. As the administration was taking a decision away from J.R. that again interfered with the

service provided to students at GWCC, this was obviously a contentious conversation.  V.P. Asti directed Ms. Tanner to remove all DRS "things" from the last 3 DRS rooms (IE1208, IE1207, IE1206) because Facilities would be coming early the next morning to remove everything.  In the rush to punish and humiliate J.R., the administration demonstrated a reckless disregard for three rooms full of $30,000 worth of assistive equipment, software, and sensitive files that had to be moved to an unknown location without sufficient manpower—the direction to secure the rooms was given to Ms. Tanner with no assistance.  The following day, J.R. and Ms. Tanner with the assistance of two ASU Social Work interns, Daniel Ayala and Taylor Barrett, successfully removed the highest priority items from the rooms, but only after workers were on the scene beginning repainting, etc.

V.P. Wise reprimanded Ms. Tanner for taking the above action rather than attending the entire morning of All Employee Day training—Ms. Tanner did attend a part of the training, but had to leave early in light of the equipment and student record vulnerability described above.  Following the incident V.P. Wise harshly reprimanded J.R. for being in the DRS office instead of at employee break-out classes.  Even President Gonzales expressed annoyance with J.R. over this, rather than gratitude about the extreme measures taken to secure equipment and maintain student confidentiality.

The calculated public humiliation of stripping the DRS offices of their furniture and the vicious attacks on J.R.'s efforts to serve the students and false claims about his not following procedures resulted in J.R. suffering a nervous breakdown in February 2017.

### *Restructuring ASU Internship Program*

Between February 13 and March 3, 2017, the administration restructured the ASU internship.  The ASU Internship program/partnership was exclusively initiated and managed by J.R. V.P. Wise and Dean Miranda-Strawbridge selected Ruben Saenz, Director of College Student Educational Services to act as Field Supervisor for the ASU Social Work interns. The interns were re-assigned.

Prior to Saenz completing his certification with ASU to accept the assignment, Dean Miranda-Strawbridge disparaged J.R. repeatedly alleging that the internship program was mismanaged. The Dean repeatedly attacked J.R. and assumed she could serve as the Field Supervisor until ASU intern Daniel Ayala informed her that she did not qualify because she did not have a Masters in Social Work.

On February 15, 2017, a formal internship meeting was held in an executive meeting room in the AF building by V. P. Wise.  In attendance were 7 ASU Social Work interns, Tom Haines, ASU Social Work Internship Liaison, V.P. Wise, Dean Miranda-Strawbridge, and Ms. Tanner. Tom Haines announced to all that he and his associates at the ASU School of Social Work had determined that the DRS office and the Gateway campus constituted "a hostile and unhealthy learning environment" for their students and they intended to "pull the plug" on this partnership.

### *Miscellaneous Acts of Hostility*

On February 6, 2017, V.P. Wise and Dean Miranda-Strawbridge demanded that J.R. write up Ms. Tanner for assisting student Sara Street process her OCR discrimination complaint in 2016, incidentally this was factually inaccurate. J.R. recognized that V.P. Wise intended to fire Ms. Tanner for activity protected by the ADA. J.R. refused to participate in this illegal activity and went home sick in response to the stress associated with the incident.

He also left because the administration began to aggressively marginalize his role and retaliate against him and the DRS department after the Street case received the OCR Resolution Agreement, and because of the hostile, bullying work environment created a serious health risk for him.

On February 13, 2017, Dean Miranda-Strawbridge admitted to retaliating against J.R. based on his efforts to bring the department into compliance. The Dean told Ms. Tanner that J.R. has "gone over our heads" a number of times; she repeatedly referred to wrong-doing and incorrect information that J.R. has allegedly given Ms. Tanner as supporting reasons why Ms. Tanner should trust the Dean as the temporarily acting DRS Manager while J.R. was on FMLA.

On February 27, 2017, the Dean told Ms. Tanner that J.R.'s health condition was something he had before she came to campus "so it had nothing to do" with her. Ms. Tanner will confirm that this remark was unsolicited and unrelated to the discussion at hand. In this same meeting the Dean directed Ms. Turner to prepare a comprehensive report listing of all the things that J.R. would have done as Manager but didn't finish because he was on leave.

On March 28, 2017, Dean Miranda-Strawbridge maligned J.R. while sitting at the DRS front counter claiming that J.R.'s proposed Area Usage Plan and the Axis Camera Install Proposal was rejected because he failed to submit them on time. This contradicts the Dean's earlier public admission on February 15, 2017, that the proposal failed because *she* did not know there was a process.

On April 3, 2017, Ms. Tanner asked if the new hire will be there for one year, what will this person's function be when J.R. returns? Dean Miranda-Strawbridge dismissed the question noting merely that she was sure things would "work out" and directed Ms. Tanner to remove Mr. Rogers' personal things from his office and store them in room IE1204, despite the adverse impact this arrangement would have on DRS serving GWCC's disabled students.

On April 6, 2017, Dean Miranda-Strawbridge provided written instruction to Ms. Tanner to remove J.R.'s personal things from his office. The Dean revealed to Ms. Tanner that two DRS offices would be given to another department asserting that DRS department is "no different than any other on campus."

On April 11, 2017, Dean Miranda-Strawbridge again maligned J.R. to his subordinate, Ms. Tanner. The Dean remarked that she and Maria were "really mad" when J.R. moved his office to the end of the hall (IE1205) because she said, "He shouldn't have done that. We believe he needs to be out here (gesturing the previous private office location IE1208) so he can see what's going on."

On May 5, 2017, Dean Miranda-Strawbridge reported to Ms. Tanner that J.R. lied to the Dean by describing a class Ms. Tanner was taking at ASU as only lasting for five weeks.  Note, the Dean participated in meetings with J.R. in which Tanner's taking classes was discussed prior to her being hired.

On May 9, 2017, Dean Miranda-Strawbridge disparaged J.R. in the DRS Managers' District Council, claiming that the DRS Department was "dysfunctional" and rife with student files that have "no documentation." These remarks were made in a public forum of disability professionals from across the district that knew J.R.  The Dean went further and blamed J.R. and his staff for the high number of pending OCR cases against GWCC. The same was reported to the President of the College.  Dean Miranda-Strawbridge falsely accused J.R. of *encouraging* students to file OCR complaints—ironically failing to understand his role in *assisting* students.

On May 11, 2017, Dean Miranda-Strawbridge accused J.R., to his subordinate Ms. Tanner, of creating practices that needed improvement, poorly managing DRS services, creating an employment contract with Jessica Galarza that was improperly made, and other general failings.

C.      Physical and psychological harm suffered by Mr. Rogers as a result

In addition to the heart attack and nervous breakdown described above, J.R. has suffered numerous cardiovascular incidents brought on by the stress caused by the outrageous treatment against him by MCCCD faculty and administration.  At this point, Mr. Rogers has been diagnosed with work-related PTSD and is unable to return to the work that he loves and has dedicated his life to as a result of the Defendants' actions.

## Individuals with Information on the Claim

Cindi Tanner, 602.434.6139 – Worked with J.R. and witnessed much of the abusive and outrageous behavior by the District administration.

Vince Hoffman, 602.410.2314 – Witnessed first-hand the retaliation executed against J.R.

Frank Zamora, 480.276.3760 – Witnessed first-hand the retaliation executed against J.R.

Rosemary Acosta, 480.586.1290 – Witnessed first-hand the retaliation executed against J.R. and the resistance to adhering to ADA accommodations.

Amy Rabideau, 608.617.9930 Witnessed first-hand the retaliation executed against J.R. and the resistance to adhering to ADA accommodations.

Lisa Ford, 602.451.5393 Witnessed first-hand the retaliation executed against J.R. and the resistance to adhering to ADA accommodations.

Rebecca Felice, 480.285.9902 – Can testify to J.R. competence and status as a well-regarded professional.

The following former interns can shed light on the effectiveness of the ASU Social Work internship program under J.R. and to some extent the public humiliation he experienced at the hands of the District administration.

Daniel Ayala - 480.658.6521
Avery Drew - 623.204.7051
Josh Root - 928.899.2894
Anthony Amesquita - 623.698.4235
Taylor Barrett - 818.675.3313

**Legal Theories in Support of Claim Arising From These Facts**

A.      ADA Retaliation

Under the Americans with Disabilities Act, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Furthermore, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

The shouting, physical threats, public humiliation, and adverse employment actions—including removing the internship program he started from his supervision and denying him the opportunity to teach a course that he had taught for many years—endured by J.R. were all in response to his "having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."

J.R.'s loss of the ability to be engaged in his life's work is the direct result of the illegal relation against him. Thus, the damages described below spring from this cause of action.

B.      Intentional Inflictions of Emotional Distress

Intentional Infliction of Emotional Distress ("IIED") requires (1) extreme and outrageous conduct by the defendant, (2) the defendant must either intend to cause emotional distress or do so with reckless disregard to the near certainty that such distress with result from the conduct, and (3) severe emotional distress indeed results from the defendant's conduct. An employer is liable for failing to investigate and respond to conduct satisfying these elements. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987)

The shouting, physical threats and public humiliation described above reach the level of extreme and outrageous conduct to satisfy a claim of IIED. When the administration bizarrely emptied J.R.'s work space and publicly declared that his right to teach a class he had taught for years would be taken away, it should have known that this would result in distress. Tragically, J.R. has experienced several cardiac events and emotional episodes in response to these attacks.

J.R.'s loss of the ability to be engaged in his life's work is the direct result of the Intentional Infliction of Emotional Distress against him by the Defendants.

C.   Interference with FMLA

J.R., until recently, was out on FMLA leave and was entitled to return to the same or an equivalent position as was held before taking the leave. 29 U.S.C. § 2614(a)(1).  Furthermore, it was unlawful for the District to interfere with, restrain or deny the exercise of any rights given under the FMLA. 29 U.S.C. § 2615(a)(1).  The District's actions of hiring a new DRS Manager and clearing out J.R.'s office interfere with his exercise of his rights under FMLA because it makes it functionally impossible for him to return to his work.

**Settlement Amount**

Mr. Rogers would prefer to resolve this matter without litigation, and a settlement offer is provided below as to his claim. If we are unable to settle this matter, we will seek declaratory and injunctive relief to enforce Mr. Rogers' legal rights as written, and/or payment of compensatory damages including but not limited to back pay for the amount of unpaid step, treble damages for the amount of the unpaid wages, and attorneys' fees and costs.

Pursuant to A.R.S. § 12-821.01, provides the following settlement calculation.

| Type of Damage | Dollar Amount |
|---|---|
| Lost wages assuming a 5% annual raise and working to the age of 70: | $ 754,674.00 |
| Out-of-pocket medical expenses and counselling over ten years: | $120,000.00 |
| Pain and suffering associated outrageous and extreme conduct: | $875,000.00 |
| **Total offer of settlement:** | **$ 1,749,674.00** |

The above calculation assumes that J.R. essentially remains on disability or some similar program with District until all of his children can take advantage of the District's free tuition benefit, and that he is able to only pay the employee portion of medical insurance premiums. Should that change, the damages would increase accordingly.

*Please note if for any reason, the District deems this Notice insufficient pursuant to A.R.S. 12-821.01 (A), it shall notify undersigned counsel within ten (10) days of the filing of the Notice of Claim with the specific allegations of insufficiency. If the District fails to address the issue of insufficiency, if any, within ten (10) days of filing this Notice of Claim, Claimants will construe such failure as waiver of any claim of insufficiency of this Notice of Claim.*

Sincerely,

James E. Barton II

EXHIBIT B



Israel G. Torres
James E. Barton II
Saman J. Golestan

July 1, 2017

**Via Certified Mail & Email**

Dr. Linda Thor, Vice President
(former Official Secretary)
Gloria Smith, Assistant to the Board
Maricopa County Community College District
Office of the Governing Board
2411 West 14th Street
Tempe, Arizona 85281-6942
linda.thor@domail.maricopa.edu
gloria.smith@domail.maricopa.edu

Steven Gonzales
Gateway Community College President
Dr. Maria Wise
Vice President of Academic & Student Affairs
and Title IX Coordinator
Vivian Miranda-Strawbridge
Dean of Student Success and Retention
108 North 40th Street
Phoenix, Arizona 85034
Steven.Gonzales@gatewaycc.edu
vivian.miranda@gatewaycc.edu
maria.wise@gatewaycc.edu

*Re:    Supplemental Information for June 29 Notice of Claim Pursuant to A.R.S. § 12-821.01
for Interference with FMLA, Retaliation for ADA Protected Activity, and Intentional
Infliction of Emotional Distress*

Dr. Thor and Governing Board:

This notice provides some additional information to assist you in evaluating the notice of claim submitted to you on behalf of Claimant Mr. James Rogers ("JR"), an employee of the Maricopa County Community College District ("MCCCD" or "District"), on Thursday, June 29, 2017.

There is no supplemental information for the sections concerning the Effort to Resolve, the Parties, or Supporting Facts.

We submit one additional Individual with Information on the Claim. Emily Bluestein has witnessed past abuses of DRS staff by faculty and the administration. She will enable the District to understand how deeply the current difficulties go.

Although, A.R.S. § 12-821.01 requires a claimant to provide only "facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed," and does not require a listing of the legal claims under which liability is asserted, we provided such information in our notice. I provide the following additions and clarifications.

In addition to a claim under ADA retaliation, JR has a claim based on the identical facts for a claim of retaliation under the Rehabilitation Act of 1973. *See* 29 U.S.C. §§ 790-794. The same is true of claims that rest with the American with Disabilities Act Amendments Act of 2008. By providing these legal theories, we do not waive the right to assert any additional legal theories based on the facts provided in the June 29 notice.

Finally, under the description of the claim for Intentional Infliction of Emotional Distress, we provided, "When the administration bizarrely emptied J.R.'s work space and publicly declared that his right to teach a class he had taught for years would be taken away, it should have known that this would result in distress." This is confusing because the incident described in the claim relates to a new class that he had been hired for, but had not actually taught before. This sentence should read, "When the administration bizarrely emptied J.R.'s work space and publicly declared that his right to teach a class he had been hired to teach would be taken away, it should have known that this would result in distress."

Please feel free to contact me to discuss the claim as we hope that the matter can be resolved efficiently.

Sincerely,

James E. Barton II

James E. Barton II

*Please note if for any reason, the District deems this Notice insufficient pursuant to A.R.S. 12-821.01 (A), it shall notify undersigned counsel within ten (10) days of the filing of the Notice of Claim with the specific allegations of insufficiency. If the District fails to address the issue of insufficiency, if any, within ten (10) days of filing this Notice of Claim, Claimants will construe such failure as waiver of any claim of insufficiency of this Notice of Claim.*

EXHIBIT C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 540-2017-03479 |

**Arizona Attorney General's Office, Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **James Rogers** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2846 E. Glencove St., Mesa, AZ 85213** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT** | **500 or More** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2411 W. 14th St.,  Tempe, AZ 85281** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-11-2017**  Latest **05-11-2017**
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I believe I have been discriminated and retaliated against by the Respondent named above in violation of the Americans with Disabilities Act of 1990, as amended.

Please see the attached documentation describing the humiliation, shouting, threats and adverse employment actions-including the removal of the internship program that I initiated from my purview and the denial of the opportunity to teach a course I had previously instructed all as a direct result of my attempt to assist disabled students as part of my job.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 60 - 4 - 17 _____ [signature] Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

*540. 2017-03479*

James Rogers
2846 E. Glencove Street
Mess, AZ 85213

September 8, 2017

*Re: Complaint for Discrimination and Retaliation*

James Rogers (J.R.) is an employee of Maricopa County Community College District (MCCD) and is submitting a charge of employment discrimination against the MCCD, Steven R. Gonzales the Gateway community College President, Maria Wise, the V.P. of Academic Affairs and Title IX Coordinator, and Vivian Miranda-Strawbridge the Dean of Student Services & Retention, with this letter. MCCD employs many employees statewide. J.R. is a Disability Resources & Services Manager at Gateway Community College (GWCC) by serving and advocating for the students at GWCC. During his time at GWCC J.R. has advocated for many disabled students including note takers and requesting special testing conditions for students, but he has been in constant opposition and in conflict with the administration and faculty.

## Advocating for disabled students at GWCC

Dr. Abdul Awad, Math & Science professor and Dr. Jim Baugh, Department Chair of Math & Science would often get into frequent confrontations with J.R. over student accommodations. In one incident Dr. Awad refused every accommodation for a diabetic student in his class. He harassed this student and released her disability in class. In the spring of 2016 Dr. Awad continuously interfered with student testing accommodations. All the while, J.R. advocated for this student to be given appropriate accommodations.

The administration also failed to resolve the multiple extremely hostile confrontations between Dr. Peter Zawicki, Physical Therapy Program Director and J.R. in private and public places. The conflicts stemmed from PTA students who were entitled to accommodations for whom J.R. advocated when Dr. Zawicki refused them. Due to J.R.'s insistence that these accommodations be met, Dr. Zawicki was hostile and verbally assaulted J.R., even in public settings. Notably, Dr. Zawicki was a principle player in discrimination against a PTA student who filed an OCR complaint.

In the beginning of spring 2016 J.R. stood up for a DRS student who was being bullied by Mike Corry and Jim Kenny while in the HVAC program. The refused to sign the student's accommodation form or adhere to the required accommodations. They even declared that they would not allow any accommodations in the HVAC classes.

1

J.R. continued to advocate for student's to receive their required accommodations. Despite this, the open hostility continued from faculty members Dr. Bryan Dodd, Division Chair, Health Sciences and Margi Schultz, Nursing Division Chair, without any support from the administration.

A new policy was issued by the faculty in December 2016, redefining accommodations. J.R. received a statement form Dr. Zawicki that he was to accompany every Instructor Notification of disability accommodations as they pertained to any lab class in the Science of Healthcare departments. This statement was a restriction and a denial of accommodations to students with a documented disability, ignoring the limited circumstances in which an accommodation could be altered. J.R. objected to this policy. Vice President of Student Affairs, Joni Grover, sanction this statement.

On December 13, 2016, V.P. Wise and Dean Miranda-Strawbridge told J.R. that it was not within the scope of his job to advocate for students or to enforce the ADA to the campus community. J.R. objected to this ridiculous claim.

J.R. met with President Steven Gonzales on February 1 2017 regarding the retaliation that J.R. was experiencing. J.R. was told that he should consider looking elsewhere for work, noting that he "didn't want to end up in court like Michael Corry" and was again told that neither J.R. nor OCR was the enforcer of ADA compliance on campus. This statement conflicted with the guidance District, Rebecca Curry.

A nursing student reported discrimination on February 6 2017 after an instructor told her to put her digital voice recorders in her purse and had to follow strict procedure that was contrary to DRS district policy. Jennifer Badalamenti, Iman Zamzam, and Reham Farid also reported to J.R. that their instructor did not like students with disabilities. Instructor Peter Melenovich and Ashley Garneu issued special instructions about how to schedule their exams at the Testing Center (and not through the DRS office). The instructors also told the students to not do the DRS's process required by the students but to instead follow their instructions. J.R. was reprimanded by the administration for advocating for these students.

<u>GWCC's mental and emotional attacks against J.R. in response</u>

While J.R. attempted to bring GWCC in compliance with the ADA he was also struggling with retaliation.

On January 20, 2016 during an attempt to explain a flexible attendance schedule for a student with an active and document seizure disorder to Dr. Jim Baugh, a faculty member, J.R. was shouted at. Dr. Baugh's shouting over the telephone was loud enough to be overheard outside his office. A statement regarding Dr. Baugh's outlandish behavior was drafted by Zach Rivenbaugh, an IT Tech who was working on J.R.'s computer at the time of the call. That statement was forwarded to the President.

In front of two students and ASU interns, Dr. Baugh barged into J.R.'s office over the objections of Ms. Cindi Tanner, claiming that he had to "have this out with him right now!" The next day President Gonzales, asked J.R. if he was "going to do anything" about the conflict. J.R.

explained that he would if something positive would come out of it, to which the President replied that the faculty would not change their behavior, acknowledging that J.R. was doing good work and had a "tough" job.

On March 2016, after being hired by Vince Hoffman, and despite being the only person with a Mater's in Social Work on campus at the time, Susan Mills, Department Chair, Arts & Humanities, Social & Behavioral Sciences, denied J.R. the opportunity to teach a social work class at the college. She was urged by Frank Zamora, Counseling Chair to not do so. She explained that the faculty "did not like" J.R. because of his role as DRS Manager. This was witnessed by Chris Mims and Dr. Vince Huffman. On March 23, 2016, in response to the public humiliation associated with this incident and the stress of the increasingly hostile environment in his department, J.R. suffered a heart attack.

The DRS had no private area to meet with students and had to perform the majority of its services in public spaces. V.P. Wise asked J.R. and the Counseling Dept. Chair Frank Zamora to choose which department would relocate to the MA building. On January 4, 2017, and throughout the month, Dean Miranda-Strawbridge repeatedly rejected J.R.'s DRS Area Usage proposal submitted to her according to her specific instructions to J.R., despite the fact that designing the layout and use of the DRS workspace was well within the purview of J.R.'s position.

On January 10, 2017, likely in retaliation for J.R.'s continuously challenging the administration and faculty on the need to faithfully execute student accommodations, the Dean directed two DRS rooms to be cleared of all furniture. Two days later, on January 12th, J.R. was directed by V.P. Tony Asti directed J.R. on how the DRS Dept. should utilize the office spaces vacated by the Counseling Dept. This was another incident of the administration again taking decisions from J.R. and interfering with the service provided to students at GWCC. In a rush to remove all DRS "things" from the last 3 DRS rooms and to punish and humiliate J.R., the administration demonstrated a reckless disregard for three rooms full of $30,000 worth of assistive equipment, software, and sensitive files that had to be moved to an unknown location without sufficient manpower.

Following the incident V.P. Wise harshly reprimanded J.R. for being in the DRS office instead of at employee break-out classes. Even President Gonzales expressed annoyance with J.R. over this, rather than gratitude about the extreme measures taken to secure equipment and maintain student confidentiality.

The calculated public humiliation of stripping the DRS offices of their furniture and the vicious attacks on J.R.'s efforts to serve the students and false claims about his not following procedures resulted in J.R. suffering a nervous breakdown in February 2017.

The ASU internship was restructured between February 13 and March 3, 2017, which was exclusively initiated and managed by J.R. V.P. Wise and Dean Miranda-Strawbridge selected Ruben Saenz, Director of College Student Educational Services to act as Field Supervisor for the ASU Social Work interns. The interns were re-assigned.

Before Saenz completed his certification with ASU in order to accept the assignment, Dean Miranda-Strawbridge disparaged J.R. repeatedly alleging that the internship program was mismanaged. The Dean repeatedly attacked J.R. and assumed she could serve as the Field Supervisor until ASU intern Daniel Ayala informed her that she did not qualify because she did not have a Masters in Social Work, as J.R. did.

On February 15, 2017, a formal internship meeting was held in an executive meeting room in the AF building by V. P. Wise. 7 ASU Social Work interns, Tom Haines, ASU Social Work Internship Liaison, V.P. Wise, Dean Miranda-Strawbridge, and Ms. Tanner were in attendance. Tom Haines announced that he and his associates at the ASU School of Social Work had determined that the DRS office and the Gateway campus constituted "a hostile and unhealthy learning environment" for their students and they intended to "pull the plug" on this partnership.

## Miscellaneous Acts of Hostility

V.P. Wise and Dean Miranda-Strawbridge demanded that J.R. write up Ms. Tanner for assisting student Sara Street process her OCR discrimination complaint in 2016. On February 6, 2017. This was later found to be factually inaccurate. J.R. recognized that V.P. Wise intended to fire Ms. Tanner for activity protected by the ADA. J.R. refused to participate in this illegal activity and went home sick in response to the stress associated with the incident.

J.R.'s role was aggressively marginalized by the administration, and they retaliated against him and the DRS department after the Street case received the OCR Resolution Agreement. Due to the hostile, bullying work environment J.R. faced a serious health risk.

On February 13, 2017, Dean Miranda-Strawbridge admitted to retaliating against J.R. based on his efforts to bring the department into compliance. The Dean told Ms. Tanner that J.R. has "gone over our heads" a number of times; she repeatedly referred to wrong-doing and incorrect information that J.R. has allegedly given Ms. Tanner as supporting reasons why Ms. Tanner should trust the Dean as the temporarily acting DRS Manager while J.R. was on FMLA.

On March 28, 2017, Dean Miranda-Strawbridge maligned J.R. while sitting at the DRS front counter claiming that J.R.'s proposed Area Usage Plan and the Axis Camera Install Proposal was rejected because he failed to submit them on time. This contradicts the Dean's earlier public admission on February 15, 2017, that the proposal failed because *she* did not know there was a process.

On April 3, 2017, Ms. Tanner asked if the new hire will be there for one year, what will this person's function be when J.R. returns? Dean Miranda-Strawbridge dismissed the question noting merely that she was sure things would "work out" and directed Ms. Tanner to remove Mr. Rogers' personal things from his office and store them in room IE1204, despite the adverse impact this arrangement would have on DRS serving GWCC's disabled students.

On April 6, 2017, Dean Miranda-Strawbridge provided written instruction to Ms. Tanner to remove J.R.'s personal things from his office. The Dean revealed to Ms. Tanner that two DRS

4

offices would be given to another department asserting that DRS department is "no different than any other on campus."

On April 11, 2017, Dean Miranda-Strawbridge again maligned J.R. to his subordinate, Ms. Tanner. The Dean remarked that she and Maria were "really mad" when J.R. moved his office to the end of the hall (IE1205) because she said, "He shouldn't have done that. We believe he needs to be out here (gesturing the previous private office location IE1208) so he can see what's going on."

On May 5, 2017, Dean Miranda-Strawbridge reported to Ms. Tanner that J.R. lied to the Dean by describing a class Ms. Tanner was taking at ASU as only lasting for five weeks. Note, the Dean participated in meetings with J.R. in which Tanner's taking classes was discussed prior to her being hired.

On May 9, 2017, Dean Miranda-Strawbridge disparaged J.R. in the DRS Managers' District Council, claiming that the DRS Department was "dysfunctional" and rife with student files that have "no documentation." These remarks were made in a public forum of disability professionals from across the district that knew J.R. The Dean went further and blamed J.R. and his staff for the high number of pending OCR cases against GWCC. The same was reported to the President of the College. Dean Miranda-Strawbridge falsely accused J.R. of *encouraging* students to file OCR complaints—ironically failing to understand his role in *assisting* students.

On May 11, 2017, Dean Miranda-Strawbridge accused J.R., to his subordinate Ms. Tanner, of creating practices that needed improvement, poorly managing DRS services, creating an employment contract with Jessica Galarza that was improperly made, and other general failings.

Conclusion

This continued harassment constitutes as discrimination against J.R. Under the Americans with Disabilities Act, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Furthermore, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

The humiliation, shouting, threats and adverse employment actions- including the removal of the internship program that J.R. initiated from his purview and the denial of the opportunity to teach a course that he had previously instructed- an employment discrimination since it comes as a direct result of J.R.'s attempt to assist disabled students as a part of his job. Therefore J.R. submits this charge against the MCCD, Gateway Community College President Steven R. Gonzales, V.P. of Academic Affairs & Title IX Coordinator Maria Wise and Dean of Student Services & Retention Vivian Miranda-Strawbridge with this letter.

5

Sincerely,

James Rogers

Contact Information of Parties:

James Rogers (J.R.)
Disability Resources & Services Manager at Gateway Community College

Steven Gonzales Gateway
 Community College President
Steven.Gonzales@gatewaycc.edu
108 North 40th Street
Phoenix, Arizona 85034

Dr. Maria Wise
Vice President of Academic & Student Affairs and Title IX Coordinator
maria.wise@gatewaycc.edu
108 North 40th Street
Phoenix, Arizona 85034

Vivian Miranda-Strawbridge
Dean of Student Success and Retention
vivian.miranda@gatewaycc.edu
108 North 40th Street
Phoenix, Arizona 85034

Dr. Linda Thor, Vice President
linda.thor@domail.maricopa.edu
Maricopa County Community College District Office of the Governing Board 2411 West 14th
Street Tempe, Arizona 85281-6942

Gloria Smith, Assistant to the Board
gloria.smith@domail.maricopa.edu

Maricopa County Community College District Office of the Governing Board 2411 West 14th
Street Tempe, Arizona 85281-6942