1  Israel G. Torres (#020303)
2  James E. Barton, II (#023888)
   Saman J. Golestan (#031710)
3  TORRES LAW GROUP, PLLC
   2239 West Baseline Road
4  Tempe, Arizona 85283
   480.588.6120
5  James@TheTorresFirm.com
   Saman@TheTorresFirm.com
6
   *Attorneys for Plaintiff*

7  **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE DISTRICT OF ARIZONA**
8

9  James Rogers and Judy Rogers,  | Case No. CV 2018-0605 PHX-GMS
10            Plaintiffs,
11  v.                             | **PLAINTIFFS' RESPONSE TO**
                                    | **MOTION FOR PARTIAL SUMMARY**
12  Maricopa County Community College, | **JUDGMENT**
    a political subdivision of Arizona;
13  Maria Wise, an individual; and Vivian
    Miranda-Strawbridge, an individual;
14
15            Defendants
16

17      Plaintiffs James and Judy Rogers submit this response to Defendants' motion for

18  partial summary judgment, urging the court to deny the motion.  The heart of this case is

19  an effort by the Maricopa County Community College District (the "District") to push

20  James Rogers from his position as Disability Resources & Service ("DRS") Manager in

21  retaliation for his efforts to ensure that the District provided the necessary, and legally

22  mandated, services to students with disabilities.

24
25

Defendants should not be permitted to strip off individual components of an overall scheme to bully and harass Mr. Rogers until he was no longer able to perform his life's work on behalf of disabled students attending Gateway Community College.

(1) The FMLA claim is an unusual FMLA claim in that the District's violation of FMLA by making Mr. Rogers aware of their intentions to replace and make it impossible for him to return to the position at Gateway exacerbated his condition.

(2) The actions taken by the District, when viewed in context with the stream of efforts to push Mr. Rogers out of his position due constitute a violation of FMLA.

(3) The ADA accommodation claim was sufficiently related to the claims raised in the EEOC complaint and the Notice of Claim to satisfy exhaustion of administrative remedies.

(4) The District's actions surround the FMLA violations when viewed in light of the overall scheme to remove Mr. Rogers survive the one-year statute of limitations.

Although the District's retaliation against Mr. Rogers due to his advocacy on behalf of disabled students attending Gateway remains the clearest claim against the District, the Court should not dismiss the above related claims.  They should be evaluated in the larger context of the District's retaliation against Mr. Rogers and resolved along with the retaliation claim.  When taken with the larger context of the retaliation, the largely undisputed facts do not entitle Defendants to judgment as a matter of law.

**I.     THE DISTRICT VIOLATED ROGERS' FMLA RIGHTS**

Defendants interfered with Mr. Rogers' FMLA rights as the final step in a concerted effort to remove him from his position as DRS Manager.  Defendants either created or failed to respond to a work environment that was so hostile that Mr. Rogers suffered a heart attack in the year prior to his going on leave, (DSOF ¶¶ 6,8), and Mr. Rogers anxiety and cardiovascular illness cause by work-related stress continue through his departure from his position at Gateway, (DSOF ¶ 10).  The hostility directed toward Mr. Rogers by faculty and administration was related to his advocating for the rights of disabled students at Gateway.  (DSOF ¶ 6.)

It is in this context that the Court must evaluate Defendants' actions after Mr. Rogers went on FMLA leave.  The administration communicated to Mr. Rogers via his friend and colleague Cindi Tanner.  (DSOF ¶¶ 33-39.)  They complained that he had reported misconduct of his supervisors.  (DSOF ¶ 33.)  They were vocally critical of his job performance in public settings.  (DSOF ¶¶ 35, 38, 39.)  They moved his office, removed his personal things, restructured a program he had started removing many of the participants, and hired a replacement.  (DSOF ¶¶ 17, 19, 21, 23.)  Although at this point, it appears that these replacements were identified as temporary, that was not communicated to Mr. Rogers—which is expected given that each of the move identified above were intended to discourage his return.

This changes are not deminimis changes as suggested by Defendants.  (MPSJ at 5.) In the case cited by Defendants, the Ninth Circuit applied the "totality of the circumstances" standard, in evaluating the employee's claim.  *Cates v. Pub. Employee*

-3-

*Ret. Sys. of Nevada*, 357 Fed. Appx. 8, 10 (9th Cir. 2009). In the instant case, the court should also apply the totality of circumstances. This is an employee who had faced such severe retaliation from the administration over his advocacy for disabled students, that he had suffered cardiac events and anxiety attacks on multiple occasions. Under these circumstances, the steps taken by the employer are not deminimis, but calculated to keep Mr. Rogers from returning.

The fact that these violations of Mr. Rogers FMLA rights exacerbated his condition does not excuse the violations. Originally, his doctor expected him to be clear to return to work on April 30, 2017. (DSOF ¶ 13.) However, following the administration's continued retaliation, he was unable to do so. (DSOF ¶¶ 15, 31.) This is unlike the cases cited in Defendant's motion where the FMLA violation had nothing to do with the employee's inability to return to work. There, the employer's actions while the employee was on leave did not cause the continued inability of the employee to return to work. Thus, while this would moot an FMLA in most situations, it does not apply here.

## II.  THE FMLA CLAIM AND FAILURE TO ACCOMMODATE CLAIMS WERE ESSENTIALLY PRESENTED TO THE EEOC

Subject matter jurisdiction for this Court is established if prior to bringing this action Mr. Rogers exhausted his EECO administrative remedies. To do so, Mr. Rogers' must have filed an EEOC complaint such that these claims would have been within the scope of a "reasonably thorough investigation," or which "can reasonably be expected to grow out of the charge of discrimination." *Gibbs v. Pierce County Law Enforcement Support,* 785 F.2d 1396, 1400 (9th Cir.1986); *Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir.1990). This condition is satisfied where the claim made is not stated explicitly in the

EEOC complaint, but is part of a larger scheme of discrimination. *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) ("Because the layoff was an integral part of Farmer Bros.'s discriminatory scheme, it was reasonably related to Estrada's charge of discriminatory failure to recall or to rehire.")

Here, the September 8, 2017 letter attached to the EEOC claim alleged the conduct described above. It identified the employees of Defendant who created the hostile work environment leading to Mr. Rogers' stress-induced medical problems. (Hong Decl. Ex. C at 1-2.) This made it clear that Gateway had become a dangerous hostile work environment for Mr. Rogers. It specifies the conduct that occurred after Mr. Rogers went out on FMLA leave that was targeted at discouraging his return. "The calculated public humiliation of stripping the DRS offices of their furniture and the vicious attacks on J.R.'s efforts to serve the students and false claims about his not following procedures resulted in J.R. suffering a nervous breakdown in February 2017." (Hong Decl. Ex. C at 3.) Similarly, under the section titled "Miscellaneous Acts of Hostility," the attachment to the EEOC complaint details the administration's communicating through Ms. Tanner to J.R. in an effort to discourage his return to work.

Of course, the primary complaint concerns the blatant retaliation against Mr. Rogers exacted by the administration against him. Nonetheless, a reasonably thorough investigation of his retaliation claim would have revealed this other violations of his rights by the administration. The claims should not be dismissed for failure to exhaust administrative remedies.

### III. DEFENDANTS' ACTIONS AFTER FEBRUARY 22, 2018 SUPPORT A FINDING OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The most outrageous conduct directed toward Mr. Rogers occurred more than a year before he filed his complaint. Nonetheless, the administration's coup de grâce—taking steps to ensure that Mr. Rogers would not return to challenge their actions in the future—occurred after February 22, 2018. For that reason, the Intentional Infliction of Emotional Distress claim is not time barred and should not be decided under this motion as a matter of law.

In their motion, Defendants acknowledge that under the Restatement (Second) of Torts section 46(2), when conduct is directed toward a third person, the actor is subject to liability if he intentionally causes server emotional distress that results in bodily harm. (MPSJ at 11 n.5.) The actions cited above are precisely this situation. The administration communicated to Mr. Rogers' through Ms. Tanner. The administration was aware that its harassment of Mr. Rogers had previously resulted in his suffering a cardiovascular event and anxiety attacks. The result of their actions was precisely what was to be expected.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for partial summary judgment and consider each of these claims in conjunction with the larger retaliation claim.

Dated this 5th of July, 2018

    /s/ James E. Barton II
James E. Barton II
Torres Law Group, PLLC
2239 W. Baseline Road

Tempe AZ, 85283
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2018, I electronically filed the attached document using ECF for filing and transmitted the document through ECF to the following registered ECF users:

David R. Schwartz
Kimberly R. Davis
1138 North Alma School Road
Suite 101
Mesa, Arizona 85201
*Attorneys for Defendants*

*s/*Saman J. Golestan