1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Rogers, et al., | No. CV-18-00605-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa Community College District, et al., | |
| Defendants. | |

## INTRODUCTION

This action arises from James Rogers's ("Rogers") employment at GateWay Community College ("GateWay"), which is part of the Maricopa County Community College District ("the District"). (Doc. 1.) Rogers alleges that the District and two GateWay administrators, Dr. Maria Wise ("Dr. Wise") and Dr. Vivian Miranda-Strawbridge ("Dr. Miranda") (collectively, "Defendants"), subjected him to a hostile work environment in retaliation for his advocacy on behalf of disabled GateWay students. (*Id.*) Rogers further alleges that he suffered a heart attack, nervous breakdown, and other medical issues as a result of Defendants' conduct, which required him to take leave from work. (*Id.*) Finally, Rogers alleges that, when he recovered and was ready to return to work, he was prevented from returning to the same or similar job and/or denied reasonable accommodations.

The complaint asserts three causes of action: (1) a claim for retaliation under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act against all

Defendants, premised on Defendants' efforts to retaliate against Rogers due to his advocacy on behalf of disabled GateWay students; (2) a claim for intentional infliction of emotional distress ("IIED") against all Defendants; and (3) a claim against the District, under both the Family Medical Leave Act ("FMLA") and the ADA, premised on the District's exacerbation of Rogers's medical issues and failure to allow him to return to work after he recovered. (*Id.*) Now pending before the Court is Defendants' motion for partial summary judgment on the second and third causes of action, which Rogers opposes. (Docs. 25, 32, 34.) As explained below, the motion will be granted in part and denied in part.

**BACKGROUND**

Defendants submitted a 39-paragraph statement of facts in support of their motion but clarified that "[t]he facts are stated in the light most favorable to Plaintiff and may not be the true facts." (Doc. 26 at 1.) In response, Rogers agreed that 37 of the 39 paragraphs were accurate. (Doc. 33.) The summary below is thus derived from Defendants' statement of facts, with Rogers's two objections denoted in footnotes.

Rogers was employed at GateWay as the Coordinator of Student Success Programs in charge of the Disability Resources & Services Office ("DRS Office"). (Doc. 26 ¶ 2.) In that role, he was responsible for identifying student needs relating to disabilities, providing mandatory services (including issuing accommodations), and serving as an advocate for disabled students. (*Id.*)

Rogers alleges he was subjected to a hostile work environment by faculty and administrators. (*Id.* ¶ 6.) Rogers had been promised a job teaching a social work class but was not hired because the faculty "did not like" him and because of his position as the manager of the DRS Office. (*Id.* ¶ 7.) The public humiliation arising from this incident, coupled with the stress arising from the hostile work environment he endured, caused Rogers to suffer a heart attack on or about March 23, 2016. (*Id.* ¶ 8.)

Sometime thereafter, Rogers returned to work. Rogers alleges he had a nervous

breakdown and suffered cardiovascular incidences due to work-related stress. (*Id.* ¶ 10.)[1] On February 6, 2017, Rogers left work because he didn't feel well. (*Id.*) He hasn't returned to work at GateWay since then. (*Id.*)

Rogers applied for and was granted FMLA leave retroactive to February 6, 2017. (*Id.* ¶ 12.) The following events occurred while Rogers was taking FMLA leave: (1) although Rogers's office "was not moved," Dr. Miranda told a coworker that she believed Rogers's office should be moved so that it "had a line of sight to the DRS front counter" (*id.* ¶ 19); (2) Dr. Miranda made numerous false and disparaging statements about Rogers, including comments to a coworker that Rogers had been insubordinate, had engaged in wrongdoing, had preexisting health problems, had told lies, and had done a poor job as the DRS coordinator (*id.* ¶¶ 33, 34, 36, 37, 39); (3) Defendants selected another GateWay employee to serve as the temporary supervisor of an ASU Internship program that Rogers had created, but Rogers "could have resumed his place as [supervisor] in the program" had he returned to GateWay (*id.* ¶¶ 20-21); (4) four ASU interns were placed in departments other than the DRS Office because they expressed a desire to work in other departments (*id.* ¶ 22); and (5) Dr. Miranda instructed a coworker to remove Rogers's personal items (a coffee mug, framed photos, and a coffee warmer) from Rogers's office and put them into storage (*id.* ¶ 23). Since beginning his FMLA leave, Rogers hasn't had any direct communication with Dr. Miranda or Dr. Wise. (*Id.* ¶ 11.)

On June 29, 2017, Defendants received a notice of claim letter from Rogers. (*Id.* ¶ 24.)

On June 30, 2017, Rogers exhausted his FMLA leave. (*Id.* ¶ 12.) However, Rogers's doctor indicated that Rogers couldn't return to work due to physical and/or mental impairments. (*Id.*) Therefore, Rogers began taking ADA leave. (*Id.*)

On July 1, 2017, Rogers supplemented the notice of claim letter. (*Id.*)

---

[1] Rogers objects to this characterization in part, arguing that his "cardiovascular incidents were [not] limited to prior to his departure . . . [and] continued after he went on FMLA leave." (Doc. 33 ¶ 10.) The Court will accept, for summary judgment purposes, Rogers's position on this issue, but the factual dispute doesn't affect the Court's analysis of any of the legal issues raised in Defendants' motion.

On October 4, 2017, Rogers filed a Charge of Discrimination with the EEOC and attached a letter to the charge. (*Id.* ¶ 25.)[2]

On or about October 6, 2017, Rogers began working with the District's human resource representatives in an attempt to locate a vacant position to assume when he became capable of returning to work. (*Id.* ¶ 27.)

On November 30, 2017, the EEOC terminated its investigation and issued a right to sue letter to Rogers. (*Id.* ¶ 30.)

**DISCUSSION**

I. <u>Legal Standard</u>

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d

---

[2] The parties disagree about the scope of this letter. (*Compare* Doc. 26 ¶ 25 *with* Doc. 33 ¶ 25.) This factual dispute is addressed below, in the portion of this Order addressing the issue of exhaustion.

1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

II. Analysis

 A. **Third Cause of Action**

The third cause of action in the complaint is asserted against only one defendant, the District, and includes two alternative theories of recovery: (1) an interference claim under the FMLA and (2) a failure-to-accommodate claim under the ADA. (Doc. 1 ¶¶ 93-100.) As explained below, the District is entitled to summary judgment on this cause of action—the FMLA theory fails as a matter of law because Rogers wasn't able to return to work at the time his FMLA leave expired, and the ADA theory fails because Rogers didn't present it to the EEOC before filing this lawsuit and thus failed to exhaust his administrative remedies.

 1. FMLA/Interference

Defendants argue the District couldn't have interfered with Rogers's right to reinstatement under the FMLA because reinstatement requires an employee to be able to return to work and perform essential functions, yet Rogers wasn't able to return to work at the time his FMLA leave expired and "did not request reinstatement for more than six months after exhaustion of his FMLA leave." (Doc. 25 at 3-4.)

Rogers concedes he was unable to return to work at the time his FMLA leave expired, which would ordinarily preclude him from asserting an FMLA interference claim, but argues his claim "is an unusual FMLA claim" because the District "exacerbated his [medical] condition" while he was on leave by disparaging him to a coworker, making comments about moving his office, removing personal items from his office, restructuring

the internship program he'd created, and hiring a replacement. (Doc. 32 at 2-4.) Rogers contends these actions interfered with his medical recovery and thus "cause[d] [his] continued inability . . . to return to work." (*Id.*)

The FMLA entitles covered employees to "up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). It "creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Id.* at 1122 (citations omitted). The Ninth Circuit has emphasized that "the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (internal quotation marks and citations omitted). Accordingly, if an employee is unable to return or perform essential functions at the time his FMLA leave expires, he is not entitled to reinstatement. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763-64 (5th Cir. 2001) (citations omitted) ("If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires."); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784-785 (6th Cir. 1998) (holding that because the plaintiff "was clearly unable to return to work within the period provided by the FMLA," the defendant was entitled to summary judgment on the FMLA claim); *Kadiyan v. Medtronic*, 2011 WL 13142145, *25 (C.D. Cal. 2011) (explaining that "[n]umerous courts have held that an employer does not violate the . . . FMLA by terminating an employee who does not return to work at the conclusion of the twelve-week period of statutory leave").

Here, the undisputed facts show that Rogers's FMLA leave expired on June 30, 2017. (Doc. 26 ¶ 12; Doc 33 ¶ 12.) The undisputed facts further show that Rogers couldn't return to work on that date due to "physical and mental impairments." (*Id.*) Therefore,

Rogers can't prevail on an FMLA interference claim. Although Rogers contends the District's conduct while he was on leave exacerbated his medical condition and caused him to remain unable to return to work at the time the 12-week leave period expired, Rogers cites no cases that recognize such a theory under the FMLA and the Court hasn't found any. Accordingly, the Court grants summary judgment to the District on Rogers's FMLA claim.

### 2. ADA/Failure to Accommodate

The crux of Rogers's failure-to-accommodate claim under the ADA is that the District didn't accommodate his disability when he was capable of returning to work—Rogers contends he provided the District "with a list of alternative jobs that he would be willing to work . . . but [the District] failed to accept these suggestions or find any alternative other than [Rogers] returning to the [same] job." (Doc. 1 ¶¶ 98, 99.)

Defendants argue that a plaintiff must exhaust his administrative remedies at the EEOC before he can bring an ADA claim in federal court. (Doc. 25 at 7-9.) Defendants further argue that, although Rogers properly exhausted the first cause of action asserted in his complaint by raising *retaliation*-related allegations in his October 2017 letter to the EEOC, that letter didn't contain any allegations related to the issue of *accommodation*—and, thus, the ADA component of his third cause of action fails for lack of exhaustion. (*Id.*)

Rogers acknowledges that he didn't explicitly assert the failure-to-accommodate claim in his letter to the EEOC. (Doc. 32 at 4-5.) However, Rogers contends that he alleged a "scheme of discrimination" and a "reasonably thorough investigation of his retaliation claim would have revealed [the failure to accommodate] violations . . . ." (*Id.*)

The Court disagrees with Rogers. A plaintiff wishing to bring an ADA claim in federal court must first file a timely charge with the EEOC. *Josephs v. Pac. Bell*, 443 F.3d 1050, 1054 (9th Cir. 2005). In any subsequent lawsuit, the plaintiff may pursue "all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir.

2002). In other words, "[a]llegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* (citations and internal quotation marks omitted).

"[T]he court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. Therefore, when determining whether claims are reasonably related to the allegations in the EEOC charge, and thus whether the exhaustion requirement has been satisfied as to those unspecified allegations, courts should consider factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*

Even construing the language of Rogers's EEOC charge with "the utmost liberality," *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation omitted), Rogers didn't exhaust his administrative remedies as to the failure-to-accommodate claim. First, Rogers's EEOC charge relates to retaliation he suffered as a result of "assisting disabled students as a part of his job." (Doc. 26-4 at 23.) The failure-to-accommodate claim, in contrast, relates to Rogers's own disability, which he alleges wasn't accommodated when he was able to return to work. Second, the alleged failure to accommodate occurred months after the harassment alleged in the EEOC charge and more than a month after the date (November 30, 2017) on which the EEOC issued a right-to-sue letter. This suggests the claims are unrelated. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 645 (9th Cir. 2003) (finding claim not exhausted, in part, because "th[e] event occurred several months after the alleged harassment and even after the EEOC had issued its right-to-sue letter"). Finally, the alleged perpetrators and the locations where the misconduct occurred are different. In the EEOC charge, the alleged retaliation occurred at GateWay and was perpetrated by both the District and certain GateWay officials, including Dr. Wise and Dr. Miranda. (Doc. 26-4 at 19.) The failure-to-accommodate claim, in

contrast, is asserted only against the District, and Rogers alleges he dealt exclusively with the District's human resources officials, who were located in Tempe, Arizona. (Doc. 26 ¶ 27; Doc. 33 ¶ 27.) For these reasons, the Court concludes that Rogers failed to exhaust his failure-to-accommodate claim and thus grants summary judgment on that claim.

### B. **Second Cause of Action (IIED)**

Defendants argue that summary judgment should be granted in their favor on Rogers's IIED claim because (1) conduct occurring before February 23, 2017 is time-barred by the statute of limitations, and (2) Rogers cannot prove an essential element of the IIED tort (*i.e.,* physical presence) as to the conduct that occurred after February 23, 2017. (Doc. 25 at 9-13.)[3]

#### 1. Statute of Limitations

Defendants assert that Rogers's IIED claim mostly arises from actions occurring before he went on leave on February 6, 2017, and thus his claim, to the extent it relies on such actions, is time-barred by Arizona's one-year statute of limitations against public entities and employees. (*Id.* at 10-11.) Further, because Rogers doesn't allege that Dr. Wise said or did anything to or regarding Rogers after February 6, 2017, Defendants argue the Court must grant summary judgment in her favor on this cause of action. (*Id.*)

Rogers acknowledges that "[t]he most outrageous conduct . . . occurred more than a year before he filed his complaint" but nevertheless argues the claim isn't time-barred because the District engaged in conduct "after February 22, 2018"[4] that was calculated to "ensure Mr. Rogers would not return to challenge their actions in the future." (Doc 32 at 6.)

The Court agrees that allegations of conduct occurring outside the one-year statute of limitations period are barred. In Arizona, "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not

---

[3] Defendants also argue that conduct occurring before February 23, 2017, is time-barred under Arizona's notice of claims statute, but the Court need not address this issue because, as discussed below, the Court agrees with Defendants' statute-of-limitations argument.

[4] The Court notes that Rogers's reference to February 22, 2018 was likely a mistake.

- 9 -

afterward." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 495 n.6 (Ariz. 2007) (quoting A.R.S. § 12-821). A cause of action accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." *Watkins v. Arpaio*, 367 P.3d 72, 76 (Ariz. Ct. App. 2016) (quoting A.R.S. § 12-821.01(B)). Thus, "[t]he relevant inquiry is when did a plaintiff's 'knowledge, understanding, and acceptance in the aggregate provide [ ] sufficient facts to constitute a cause of action.'" *Thompson v. Pima Cty.*, 243 P.3d 1024, 1028 (Ariz. Ct. App. 2010) (citation omitted).

Here, Rogers filed his complaint on February 23, 2018. (Doc. 1.) Therefore, if Rogers's cause of action for IIED accrued before February 23, 2017, the claim is barred by the statute of limitations.

Most of the allegations giving rise to Rogers's IIED claim occurred before February 23, 2017. For example, in March 2016, Rogers suffered a major heart attack, caused by having to endure a hostile work environment and the public humiliation of not receiving a teaching job that was promised to him. (Doc. 26 ¶¶ 6-8.) Upon returning to work, Rogers suffered a nervous breakdown and other cardiovascular incidences, requiring him to leave work on February 6, 2017. (*Id.* ¶ 10.) Since February 6, 2017, Rogers has not returned to work at GateWay. (*Id.*) Because Rogers's health issues began before February 23, 2017, and, based on the evidence before the Court, no reasonable jury could determine that Rogers didn't know or reasonably suspect his health issues were caused by Defendants' conduct, the statute of limitations bars Rogers's IIED claim arising from pre-February 23, 2017 conduct.

There is no evidence that one defendant, Dr. Wise, engaged in any conduct related to Rogers after February 6, 2017. This means that Dr. Wise is entitled to summary judgment on the IIED claim. In contrast, because there is evidence that the other two defendants, the District and Dr. Miranda, engaged in post-February 23, 2017 conduct toward Rogers, the statute-of-limitations issue is not dispositive of the IIED claim against them.

2. Physical Presence Requirement

The District and Dr. Miranda offer a single, narrow argument as to why they are entitled to summary judgment on the IIED claim despite the existence of conduct post-dating February 23, 2017—they contend (1) the only challenged conduct from this period involves Dr. Miranda making false and disparaging statements about Rogers to third parties, (2) under Arizona law, the tort of IIED only encompasses statements made in the presence of the plaintiff, and (3) because Rogers wasn't present when Dr. Miranda made the challenged statements, he therefore can't bring an IIED claim based upon them. (Doc. 25 at 10-11, citing *McKee v. State of Arizona*, 388 P.3d 14 (Ariz. Ct. App. 2016), and Restatement (Second) of Torts § 46(2).)

Rogers responds that Defendants are wrong about the law, that an actor "is subject to liability if he intentionally causes [severe] emotional distress that results in bodily harm," and that Dr. Miranda's comments to the third parties "are precisely this situation." (Doc. 32 at 6.)

In their reply, Defendants reiterate that an IIED claim "is limited to plaintiffs that are present at the time of the alleged statements and conduct" and that Rogers hasn't alleged he was present. (Doc. 34 at 5-6.)

The Court isn't persuaded that, to succeed on the IIED claim, Rogers must have been present when Dr. Miranda made the challenged statements. Defendants cite *McKee v. State*, 388 P.3d 14 (Ariz. Ct. App. 2016), in support of this argument, but the *McKee* holding was not so broad: "For one to recover for intentional infliction of emotional distress *arising from death or injury to a family member*, the plaintiff must allege she was present at the time of the extreme and outrageous conduct." *Id.* at 21 (citations omitted) (emphasis added). This isn't a sweeping holding that physical presence is always required in IIED cases.

Defendants' reliance on the Restatement (Second) of Torts § 46(2) is similarly unavailing. That provision only imposes a physical-presence requirement when extreme conduct is "directed at a third person" and the conduct is so distressing that one of the

- 11 -

victim's family members, or a spectator, suffers harm from observing the spectacle.[5] Here, in contrast, Rogers alleges that, on at least one occasion, Dr. Miranda made statements to a coworker for the purpose of eroding that coworker's trust in Rogers. (Doc. 26 ¶ 33.) The allegedly extreme and outrageous conduct wasn't "directed at" harming the coworker—it was directed at causing harm to Rogers. Other courts haven't required the physical presence of the plaintiff in analogous circumstances. *See, e.g., Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1166 (10th Cir. 1981) (holding that plaintiff stated a claim for IIED even though she wasn't present when defendant committed the wrongful action because "[t]he absence of the plaintiff during the tortious conduct was irrelevant," as "plaintiff was the party most likely to suffer emotional distress upon learning of the defendant's actions."); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1275-76 (3d Cir. 1979) (upholding IIED liability where a team physician made a statement to the press that plaintiff was suffering from a potentially fatal disease but plaintiff wasn't present when statement was made).

In short, the Court isn't convinced that Rogers must have been present when the statements and conduct occurred. And because Defendants moved for summary judgment only on this basis, the Court will deny summary judgment on the IIED claim as to Dr. Miranda and the District.[6]

---

[5] Comment (l) to § 46 provides the following explanation for this requirement: "Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. . . . The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford. The Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required."

[6] This conclusion isn't an endorsement of the validity of Rogers's IIED claim. In fact, the Court has serious doubts Rogers can prove that Defendants committed "extreme and outrageous" conduct. Conduct is only considered "extreme and outrageous" where that conduct is "'atrocious' and 'beyond all possible bounds of decency' so that an average member of the community would regard it as outrageous." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1015 (Ariz. 1986) (citation omitted). Further, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment (Doc. 25) is granted in part and denied in part, as set forth above.

Dated this 6th day of February, 2019.

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>
Dominic W. Lanza
United States District Judge

---

of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citation omitted). But because Defendants didn't move on this ground, the Court doesn't reach it.